IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LUCIANA BERCEANU and JUDY
HERNANDEZ, on behalf of themselves,
their respective beneficiaries and all
others similarly situated,

                              Plaintiffs,                    OPINION AND ORDER

        v.                                                        19-cv-568-wmc

UMR, INC.,

                              Defendant.

On behalf of themselves, their beneficiaries, and a similarly-situated putative class, plaintiffs Luciana Berceanu and Judy Hernandez assert claims against defendant UMR, Inc., in its role as a plan administrator for their employer-sponsored health plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the court are two motions: (1) a motion to dismiss by defendant UMR under Federal Rule of Civil Procedure 12(b)(6) (dkt. #25); and (2) a motion for class certification by plaintiffs under Federal Rule of Civil Procedure 23 (dkt. #53). For the reasons that follow, the court will deny defendant's motion to dismiss as to plaintiffs' claims under § 502(a)(1)(B) and grant the motion as to plaintiffs' claims under § 502(a)(3). As for plaintiffs' motion for class certification, the court will grant that motion, certify the requested class and appoint named plaintiffs and their counsel as class representatives and class counsel, respectively.

FACTUAL BACKGROUND

Named plaintiffs are participants in two different health care plans governed by ERISA, for which UMR is the benefit claims administrator.  These two plans expressly grant UMR discretion to interpret the terms of the plans to the adjudicate claims for benefits.  In administering the plans, UMR serves as an ERISA fiduciary based on its delegated responsibility for exercising discretion in making benefit determinations.  Central to plaintiffs' claims as an essential condition of coverage, the plans require that services must be consistent with "generally accepted standards of medical practice."  (Compl. (dkt. #1) ¶ 11.)  More specifically, plaintiffs allege that UMR adopted clinical criteria known as the UBH Level of Care Guidelines ("the Guidelines") to determine whether requests for coverage satisfied the plans' requirements that covered treatment be consistent with generally accepted standard of medical care.  The criteria in these Guidelines state what standards must be satisfied before coverage will be approved at a particular level of care, and plaintiffs specifically challenge the creation and application of the Guidelines concerning inpatient mental health and substance use disorder treatment.

In particular, plaintiffs allege that UMR adopted Guidelines that are overly restrictive, contravening generally accepted standards of medical care and, therefore, violating plan requirements.  Plaintiffs also allege that UMR applied the Guidelines to adjudicate plaintiffs' requests for coverage, subjecting them to an arbitrary and capricious process.

Consistent with these allegations, plaintiffs assert four causes of action:  (1) a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(1)(B) (also referred to as

§ 502(a)(1)(B)); (2) a claim for improper denial of benefits also under 29 U.S.C. § 1132(a)(1)(B); (3) a claim for equitable relief under 29 U.S.C. § 1132(a)(3)(A) (also referred to as § 502(a)(3)); and (4) a claim for other appropriate equitable relief under 29 U.S.C. § 1332(a)(3)(B), but only to the extent the equitable relief under § 1132(a)(1)(B) is unavailable.  As for relief, plaintiffs seek the following:  (1) "[d]eclaring that UMR's adoption of the guidelines complained of herein violated UMR's fiduciary duties"; (2) "[i]ssuing a permanent injunction ordering UMR to stop utilizing the guidelines complained of herein, and instead adopt guidelines that are consistent with generally accepted standards of medical practice"; and (3) "[o]rdering UMR to reprocess claims for residential treatment that it previously denied (in whole or in part) pursuant to new guidelines that are consistent with generally accepted standards of medical practice." (Compl. (dkt. #1) p.17.)

In addition to these individual claims and requests for relief set forth in the complaint, plaintiffs propose the following class:

> Any member of a health benefit plan governed by ERISA whose request for coverage or residential treatment services for mental illness or substance use disorder was denied by UMR, in whole or in part, within the applicable statute of limitations, based on UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and such denial was not reversed following an administrative appeal.

(Pls.' Br. (dkt. #55) 7.)  As described in the allegations above, plaintiffs contend that the respective plans administered by UMR define medically necessary or medical necessity with reference to "generally accepted standard of medical practice."  (*Id.* at 10-11.)  In administering mental health and substance use disorder benefits for members of the

3

putative class, UMR adopted UBH Level of Care Guidelines in effect between July 2016 and December 2019, with each edition setting certain "common criteria" required for UMR to consider in determining whether a treatment was medically necessary.

Plaintiffs also note their intent to present expert testimony and other evidence to demonstrate that (1) each edition of the Guidelines were more restrictive than generally accepted standards of medical practice and (2) UMR knew or should have known about the defects in its Guidelines. Plaintiffs further aver and submit a data summary from UMR reflecting that at least 1,600 individuals meet the class definition. Finally, according to plaintiffs' review of a 50-member claim sample, 49 of those individuals would meet the class definition for denials of coverage based on the Guidelines.

OPINION

## I.  Motion to Dismiss

### A.  Section 502(a)(1)(B) Claims

Defendant seeks dismissal of plaintiffs' § 502(a)(1)(B) ERISA claims on the basis that UMR is not a proper defendant. Specifically, defendant argues that these claims challenge a denial of benefits, which must be brought against the health plans themselves, rather than against UMR. While the court agrees with defendant that a claim for benefits under a plan should be brought against the plan itself, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 910 (7th Cir. 2013), plaintiffs are *not* seeking an award of benefits under their respective plans. Instead, as plaintiffs assert in their opposition, § 502(a)(1)(B) permits causes of action "to enforce rights under the terms of the plan, *or* to clarify his rights to future benefits under the terms of the plan," in addition to permitting a civil

4

action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

In response, defendant contends that plaintiffs are relying on a statutory interpretation that has not been endorsed by any court, while plaintiffs' opposition purports to cite numerous courts permitting claims against a Plan administrator fiduciary who, like defendant here, controlled the benefits adjudication process. *E.g.*, *New York State Psychiatric Ass'n Inc. v. United Health Grp.*, 798 F.3d 125 (2d Cir. 2015) (citing cases from six sister circuits in agreement that claims administrators may be sued as defendants under § 502(a)(1)(B), including *Larson v. UnitedHealthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013)).[1] Moreover, defendant cites to cases involving claims against a plan administrator for recovery of benefits, which is not at issue here. *E.g.*, *Weeks v. UMR, Inc.*, 370 F. Supp. 3d 943, 953-54 (C.D. Ill. 2018) (dismissing claims against UMR for recovery of benefits because UMR was an improper party). (*See also* Pls.' Opp'n (dkt. #28) 11 (distinguishing other cases cited by defendant on the same basis).) At its core, therefore, defendant's motion to dismiss would appear to rest on a misrepresentation or misreading of plaintiffs' claims. In any event, because plaintiffs are not seeking an order recovering benefits, plaintiffs may pursue claims against defendant UMR as the plan administrator to enforce the terms of the plans and clarify their rights under the plans.

---

[1] In *Larson*, the Seventh Circuit held that a claim for benefits due must be brought against the party having the obligation to pay, which is "normally" the plan, but the court did *not* hold that a plan administrator could not be a named defendant. To the contrary, as the Second Circuit recognized in citing to *Larson*, a party other than the plan may be a proper defendant under § 501(a)(1)(B). *See Larson*, 723 F.3d at 911 ("The qualifier "normally" is important, however. In many cases the plan will be the right (and only proper) defendant when a participant or beneficiary seeks benefits owed under the terms of the plan. But it does not follow from this general rule that an ERISA claim for benefits may never be brought against an insurer.").

**B. Section 502(a)(3) Claims**

Defendant's arguments for dismissing plaintiffs' ERISA claims under § 502(a)(3) have more traction.  In *Varity Corporation v. Howe*, 516 U.S. 489 (1996), the Supreme Court explained that § 502(a)(3) operates "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 512.  As such, a plaintiff may not pursue a claim under § 502(a)(3) if a remedy is available elsewhere in ERISA.  There is an exception to this general rule where plaintiffs allege an injury that is "separate, distinct and severable from the alleged harm arising from the [underlying] benefit denial." *Biglands v. Raytheon Emp. Sav. & Inv. Plan*, 801 F. Supp. 2d 871, 786 (N.D. Ind. 2011).  For example, in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), the Supreme Court allowed plaintiffs to seek equitable relief under § 502(a)(3) based on allegedly misleading plan communications that caused plaintiffs a distinct injury for which no remedy existed under § 502(a)(1)(B).

Based on this exception, plaintiffs contend that there are two such "separate, distinct and severable" injuries at play in this case.  First, plaintiffs contend that UMR's *adoption* of ultra-restrictive Guidelines is a separate injury from UMR's *application* of those Guidelines to plaintiffs' requests for coverage.  (Pls.' Opp'n (dkt. $17) 21-22.)  This argument doesn't hold water.  Even if its credible to tease apart the creation of the Guidelines from their application, it is not plausible that the simple adoption of Guidelines creates an injury; instead, the injury only occurs at the point UMR allegedly, wrongfully applies those Guidelines to deny claims.  Moreover, even assuming some kind of a distinct injury, plaintiffs fail to articulate any equitable relief that would not be available under

§ 502(a)(1)(B) but would be available under § 502(a)(3) given the allegations at play in this case.  (*See* Pls.' Opp'n (dkt. #17) 17 n.6 ("The real question is, assuming that Plaintiffs *prevail* on their substantive claims against UMR, does § 1132(a)(1)(B), all by itself, provide them with a complete and adequate remedy?  If not, additional relief is available under § 1132(a)(3).").)  Specifically, though hinting otherwise, plaintiffs neither explain nor can the court discern how the equitable relief they seek in their complaint -- a declaration that defendant's Guidelines violate fiduciary duties, an injunction against their application, an injunction requiring reprocessing -- would not be available under § 502(a)(1)(B).

Second, plaintiffs point to *other* cases involving claims requiring a combination of relief under § 502(a)(3)(B) and § 502(a)(1)(B) to make plaintiffs whole, *e.g.*, *Amara*, 563 U.S. at 438-40 (allowing plaintiffs to pursue reformation of the plan under § 502(a)(3)(B) and enforcement of new plan terms under § 502(a)(1)(B)), but just because some set of facts may justify a combination of remedies does not mean a § 502(a)(1)(B) claim is necessary, much less available, in every case.  Having failed to articulate good cause on the alleged facts here, therefore, the court will grant defendant's motion to dismiss plaintiffs' separate § 502(a)(1)(B) claims.

## II. Motion for Class Certification

As noted, plaintiffs' motion for class certification is also before the court, and defendant's opposition largely rests on the same assumption it made in moving to dismiss plaintiffs' § 502(a)(1)(B) claims:  that plaintiffs seek an order awarding benefits.  Because this argument rests on a misinterpretation of plaintiffs' claims, the court rejects defendant's

various challenges.  With that initial point aside, the court turns to the required analysis under Rule 23.

To certify a class, plaintiffs must satisfy a two-step process.  *See* Fed. R. Civ. P. 23(a)-(b); *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 864 (7th Cir. 2018).  Initially, the proposed class must satisfy four threshold requirements under Rule 23(a): numerosity, commonality, typicality and adequacy.  Fed. R. Civ. P. 23(a).  If the Rule 23(a) prerequisites are satisfied, then "the plaintiffs must demonstrate that one of the conditions of Rule 23(b) is met." *Lacy*, 897 F.3d at 864.  Here, plaintiffs seek to certify a class under Rule 23(b)(2), which requires that the challenged conduct "appl[ies] generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).[2]  For the reasons that follow, the court finds that both steps of the certification process are satisfied here.

## A. Rule 23(a) Requirements

### 1. Numerosity

As for the requirement that the proposed "class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), a class's size need not be determined with absolute certainty; rather, the requirement is satisfied "so long as it's reasonable to believe [that the class is] large enough to make joinder impracticable and thus justify a class action suit."  *Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677-78 (7th Cir. 2009)).

---

[2] In the alternative, plaintiffs seek to certify a class under Rule 23(b)(3), but as discussed below, since Rule 23(b)(2) covers the requested relief, the court need not consider whether this case would also satisfy the predominance and superiority requirements under subsection (b)(3).

As detailed above, plaintiffs have submitted evidence that at least 1,600 individuals were denied coverage by UMR and that coverage was not overturned on appeal. Further, plaintiffs contend that of that 1,600, the vast majority involved a denial due, at least in part, to the application of the allegedly offending Guidelines. In its response, defendant does not challenge that the numerosity requirement is satisfied; instead, it focuses on commonality and related requirements. Regardless of the exact numbers at stake, therefore, the court agrees that "joinder of all members [is] impracticable." Fed. R. Civ. P. 23(a)(1).

## 2. Commonality

Next, plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, plaintiffs "must assert a common injury that is 'capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lacy*, 897 F.3d at 865 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Put another way, "the key to commonality is 'not the raising of common 'questions' . . . but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting *Dukes*, 546 U.S. at 350).

As plaintiffs contend, this case presents a common challenge to whether UMR's Guidelines violate the terms of the plans at issue, by being more restrictive then the generally accepted standards of medical practice. Specifically, plaintiffs argue that "the

claims of every single member of the proposed Class turn on the following questions," among others:

- Was UMR acting in its capacity as an ERISA fiduciary when it adopted the Guidelines as its clinical criteria for making behavioral health medical necessity determinations?

- Are the Guidelines consistent with generally accepted standards?

- Did UMR breach its fiduciary duties when it adopted its Guidelines?

(Pls.' Br. (dkt. #55) 22.)

In response, defendant contends that there are no common questions because the coverage decisions at stake here will necessarily turn on individual issues, requiring a claim-by-claim analysis.[3]  If plaintiffs were seeking to certify a class for recovery of benefits, defendant's argument would have more merit, but as explained above, plaintiffs are *not* seeking recovery of benefits; rather, they seek a declaratory judgment that UMR's application of the Guidelines violated the terms of the respective ERISA plans. Accordingly, defendant's resort to ERISA cases describing the key question of whether there is "sufficient rational support" in the "administrative record" for individual coverage denials is of no particular import in this case.  (Def.'s Opp'n (dkt. #58) 29 (quoting *Back v. Long Term Disability Ins.*, 583 F.3d 738, 745, 746 n.3 (7th Cir. 2009)).)

At most, defendant's argument supports a finding that even if the Guidelines are found to violate the terms of the plans, there still may be independent reasons for denying coverage for members of the class.  Fair enough, but this does not present a basis for declining to certify a class for broader equitable declarations or injunctions.  Instead, if

---

[3] Defendant also argues that differences in plan language undermine a finding of commonality, but fails to develop an argument that variations in language impact plaintiffs' claims.

plaintiffs are successful in demonstrating liability and receive the requested relief, directing UMR to review denials based on guidelines that comply with the plans, then for at least some class members, the denials may stand because UMR did not rely on the Guidelines in denying coverage was not material or had an independent reasons for denying coverage that were not impacted by any change in the Guidelines.  However, the fact that some class members may not benefit monetarily from a liability finding in favor of the class as a whole does not serve as a basis for denying certification.

As the Seventh Circuit recognized in *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012), there is an important distinction "between class members who were *not* harmed and those who *could not* have been harmed," and held that including class members who were not harmed in the class definition does not preclude class certification.  *Id.* at 825 (emphasis included).  To the contrary,

> [t]he problem posed by class members whose claims may fail on the merits for individual reasons is the obverse of a different problem with class definition: the problem of the "fail-safe" class: one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.

*Id.*[4]  Accordingly, on this record, the court concludes that plaintiffs have met their burden of demonstrating the commonality requirement.  *See id.* at 811 ("It is sufficient if each disputed requirement has been proven by a preponderance of evidence.").

### 3.  Typicality

Plaintiffs must also show that their claims "are typical of the claims" of the class. Fed. R. Civ. P. 23(a)(3).  This ensures that the named plaintiffs' claims share "the same essential characteristics as the claims of the class at large." *Lacy*, 897 F.3d at 866 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).  In other words, plaintiffs' claims must "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Defendant contends that plaintiffs are not typical because they exhausted their administrative review, whereas most putative class members did not.  While this may form a difference between plaintiffs and putative class members, however, defendant again fails to develop an argument or otherwise explain why this difference would distinguish the named plaintiffs' claims and right to general, equitable remedies in any meaningful way. In other words, taking advantage of the administrative process does not alter the proposed class's core claim that the Guidelines violate ERISA.  This is especially true given plaintiffs' evidence that any "independent" medical review as part of the appeal process was

---

[4] As described above, in ruling on defendant's motion to dismiss, the court rejects plaintiffs' argument that the adoption of the Guidelines constitutes a separate injury.  As a result, the court need not consider defendant's argument that its adoption of the Guidelines is not independently actionable.  Regardless, the class is defined in such a way to limit it to individuals who were *denied* coverage, not simply subject to plans administered by UMR.

conducted with reference to the same Guidelines.  (Pls.' Opening Br. (dkt. #55) 19 ("UMR staff was required to specify in the request form [for a physician medical necessity review] the Guidelines to be used and to include a recommended decision rationale.").)[5]

### 4. Adequacy

Finally, plaintiffs must show that they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A class representative is *not* adequate if he is subject to a defense to which other class members are not subject or could not prove the elements of the class claim for reasons particular to him or her.  *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-25 (7th Cir. 2011).  In addition to the named plaintiffs, courts are also required to determine whether the proposed class counsel is adequate.  *See Gen. Tele. Co. of S.W. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982) (adequacy "raises concerns about the competency of class counsel and conflicts of interest").

In its opposition brief, defendant purports to challenge adequacy and typicality together.  As for the proposed class representatives, the court rejects defendant's challenge to adequacy for the same reasons it rejects its challenge to typicality.  Further, defendant offers *no* challenge to plaintiffs' evidence of the adequacy of their proposed class counsel, and the court finds no basis to question class counsel's ability to manage this class action. (*See* Pls.' Opening Br. (dkt. #55) 25-26.)

---

[5] Moreover, defendant's argument that the named plaintiffs' claims are atypical because of different financial motivations is similarly unavailing given that it again rests on the erroneous assumption that plaintiffs are seeking recovery of benefits as a remedy in this case.

## B. Rule 23(b) Requirements

Having met all four Rule 23(a) prerequisites, plaintiffs must also establish that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" because the opposing party's actions are based "on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). In particular, classes under Rule 23(b)(2) are appropriate "when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 787 F.3d 426, 441 (7th Cir. 2015). A Rule 23(b)(2) class is appropriate if "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 443 (quoting *Dukes*, 564 U.S. at 360).

While defendant again contends that this case cannot be certified under Rule 23(b)(2) because "individualized issues of liability would simply be kicked down the road" (Def.'s Opp'n (dkt. #58) 46), this argument rests on the same misinterpretation of plaintiffs' requested relief. Plaintiffs are not seeking recovery of monetary benefits as part of this lawsuit; therefore, certifying this case under Rule 23(b)(2) will allow for plaintiffs' claims to be fully resolved. In other words, there will be no individual issues of liability, or even relief, as part of this lawsuit. Instead, any relief provided would go no further than entry of an injunction requiring a remand to UMR for a review of individual class member's denials under revised guidelines that comply with ERISA.

Even though defendant persists in arguing that remand for review is an untenable remedy, as plaintiffs point out, when a benefit administrator has been found to have acted arbitrarily and capriciously, remand for a new determination is the standard remedy under

ERISA.  *E.g.*, *Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 447 (7th Cir. 2019) ("The most common remedy when an ERISA plan administrator's decision is deemed arbitrary is to remand the matter for a fresh administrative decision.").  While this remedy may be only a first step for individual class members, this is not a reason for denying class certification.  Regardless, implementation of that remedy is an issue for another day.

## ORDER

IT IS ORDERED that:

1) Defendant UMR, Inc.'s motion to dismiss (dkt. #25) is GRANTED IN PART AND DENIED IN PART.  The motion is granted as to plaintiffs' claims under § 502(a)(3), but denied as to their claims under § 502(a)(1)(B).

2) Plaintiffs Luciana Berceanu and Judy Hernandez's motion for class certification (dkt. #53) is GRANTED.

3) The court CERTIFIES the following class under Federal Rule of Civil Procedure 23(b)(2):

> Any member of a health benefit plan governed by ERISA whose request for coverage or residential treatment services for mental illness or substance use disorder was denied by UMR, in whole or in part, within the applicable statute of limitations, based on UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines, and such denial was not reversed following an administrative appeal.

4) Plaintiffs Luciana Berceanu and Judy Hernandez are appointed as class representatives.  Plaintiffs' counsel, the law firms of Zuckerman Spaeder LLP, Psych-Appeal, Inc., and Gingras, Thomsen & Wachs, are appointed as class counsel.

Entered this 15th day of December, 2021.

BY THE COURT:
/s/

_____

WILLIAM M. CONLEY
District Judge

15